United States District Court
District of Columbia

**AFFIDAVIT OF SPECIAL AGENT STEPHEN F. FRAGA IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

Your affiant, Stephen F. Fraga, a Special Agent with the Drug Enforcement Administration, being duly sworn, hereby depose and state as follows:

**A. Introduction and Agent Background**

1. I make this affidavit in support of an application for a search warrant for a certain accounts controlled by the free web-based electronic mail service provider known as MSN Hotmail (hereinafter "Hotmail") headquartered at 1065 LaAvenida, Building #4, Mountain View, California 94043. The accounts to be searched are **jcamesella@hotmail.com** and **richardchesman@hotmail.com** which are further described in the following paragraphs and in Attachment A. As set forth herein, there is probable cause to believe that on the computer systems of Hotmail, there exists evidence depicting violations of Title 21 United States Code, Section 952 (Importation of Controlled Substances), Section 959(a) (Manufacture or distribution for purpose of unlawful importation) and Section 963 (Attempt and Conspiracy), and Title 46 United States Code Appendix, Section 1903 (Manufacture, distribution, and possession with intent to distribute controlled substances on board vessels).

2. I am a Special Agent ("SA") of the Drug Enforcement Administration ("DEA") and have served in that capacity since March 1991. I am currently assigned to the Bilateral Case Group, Special Operations Division. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is,

an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1).

3. I have specialized training and experience in narcotics smuggling and distribution investigations. During my employment with DEA, I have participated in more than three hundred (300) investigations into the unlawful importation, possession with intent to distribute, and distribution of controlled substances, as well as related laundering of monetary instruments. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, court ordered wiretaps, and arrests of numerous drug traffickers. I have debriefed numerous defendants, confidential informants, and other witnesses having extensive knowledge of the inner workings of major narcotics trafficking organizations. I have also spoken on numerous occasions with other experienced narcotics investigators concerning the methods and practices of drug traffickers. Furthermore, I have attended narcotics, money laundering and wiretap specialized training courses. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

4. In my training and experience, I have learned that Hotmail is a company that provides free web based Internet electronic mail ("e-mail") access to the general public, and that stored electronic communications, including opened and unopened e-mail for Hotmail subscribers may be located on the computers of Hotmail. Further, I am aware that computers located at Hotmail contain information and other stored electronic communications belonging to unrelated third parties.

Accordingly, this affidavit and application for search warrant seek authorization solely to search the computer accounts and/or files and following the procedures described herein and in Attachment A.

**B. Background Regarding Computers, the Internet, and E-mail**

5. The term "computer" as used herein is defined in 18 U.S.C. 1030(e)(1), and includes an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

6. Based on my training, experience and knowledge, I know the following:

   a. The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. In order to access the Internet, and individual computer user must subscribe to an access provider, which operates a host computer system with direct access to the Internet. The World Wide Web ("www") is a functionality of the Internet, which allows users of the Internet to share information;

   b. With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world. This connection can be made by any means, including modem, local area network, wireless and numerous other methods; and

   c. E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users. When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the subscriber's mail server, then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users.

An e-mail server may allow users to post and read messages and to communicate via electronic means.

**C. Hotmail**

    7. Based on my training and experience, I have learned the following about Hotmail:

        a. Hotmail is an e-mail service which is available free of charge to Internet users. Subscribers obtain an account by registering on the Internet with Hotmail. Hotmail requests subscribers to provide basic information, such as name, gender, zip code and other personal/biographical information. However, Hotmail does not verify the information provided;

        b. Hotmail maintains electronic records pertaining to the individuals and companies for which they maintain subscriber accounts. These records include account access information, e-mail transaction information, and account application information;

        c. Subscribers to Hotmail may access their accounts on servers maintained and/or owned by Hotmail from any computer connected to the Internet located anywhere in the world;

        d. Any e-mail that is sent to an Hotmail subscriber is stored in the subscriber's "mailbox" on Hotmail's servers until the subscriber deletes the e-mail or the subscriber's mailbox exceeds the storage limits preset by Hotmail. If the message is not deleted by the subscriber, the account is below the maximum limit, and the subscriber accesses the account periodically, that message can remain on Hotmail's servers indefinitely;

        e. When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Hotmail's servers, and then transmitted to its end destination. Hotmail

users have the option of saving a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Hotmail server, the e-mail can remain on the system indefinitely. The sender can delete the stored e-mail message thereby eliminating it from the e-mail box maintained at Hotmail, but that message will remain in the recipient's e-mail box unless the recipient deletes it as well or unless the recipient's account is subject to account size limitations;

  f. A Hotmail subscriber can store files, including e-mails and image files, on servers maintained and/or owned by Hotmail; and

  g. E-mails and image files stored on a Hotmail server by a subscriber may not necessarily be located in the subscriber's home computer. The subscriber may store e-mails and/or other files on the Hotmail server for which there is insufficient storage space in the subscriber's computer and/or which he/she does not wish to maintain in the computer in his/her residence. A search of the files in the computer in the subscriber's residence will not necessarily uncover the files that the subscriber has stored on the Hotmail server.

**D. Stored Wire and Electronic Communication Access**

 8. Title 18, United States Code, Chapter 121, Sections 2701 through 2711, is entitled "Stored Wire and Electronic Communications and Transactional Records Access."

 a) Title 18, United States Code, Section 2703(a), provides:

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in

an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.[1]

b) Title 18, United States Code, Section 2703(b), provides, in part:

(1) A government entity may require a provider of remote computing service to disclose the contents of any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection-
(A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation. . .
(2) Paragraph (1) is applicable with respect to any electronic communication that is held or maintained on that service -
(A) On behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and
(B) Solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

c) The government may also obtain records and other information pertaining to a subscriber to or customer of electronic communication service or remote computing service by way of a search warrant. 18 U.S.C. 2703(c)(1)(A). No notice to the subscriber or customer is required. 18 U.S.C. 2703(c)(3).

d) Title 18, United States Code, Section 2711, provides, in part:

As used in this chapter -
(1) The terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section; and
(2) The term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

---

[1] The United States District Court for the District of Columbia has jurisdiction over the offenses under investigation. See 21 U.S.C. 959(c) and 46 U.S.C. Appendix 1903(f).

6

e) Title 18, United States Code, Section 2510, provides, in part:

> (8) "contents" when used in respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication...
> (14) "electronic communications system" means any wire, radio, electromagnetic, photo optical or photo electronic facilities for the transmission of electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications;
> (15) "electronic communications service" means any service which provides the users thereof the ability to send or receive wire or electronic communications;...
> (17) "electronic storage" means -
>> (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
>> (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

**E. Search Procedure**

9. In order to ensure that Agents search only those computer accounts and or files described in Attachment A, this affidavit and application for search warrant seeks authorization to permit employees of Hotmail to assist agents in the execution of this warrant. To further ensure that Agents executing this warrant search only those computer accounts and/or files described in Attachment A, the following procedures will be implemented:

   a. The search warrant will be presented to Hotmail personnel who will be directed to isolate those accounts and files described in Attachment A;

   b. In order to minimize any disruption of computer service to innocent third parties, Hotmail employees (with or without law enforcement personnel) trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Attachment

A, including an exact duplicate of all information stored in the computer accounts and files described in Attachment A;[2]

  c. Hotmail employees will provide the exact duplicate in electronic form of the accounts and files described in Attachment A and all information stored in those accounts and files to the agent who serves this search warrant;

  d. Law enforcement personnel will thereafter review the information stored in the accounts and files received from Hotmail employees and then identify and copy the information contained in those accounts and files which are authorized to be further copied by this search warrant; and

  e. Law enforcement personnel will then seal the original duplicate of the accounts and files received from Hotmail employees and will not further review the original duplicate absent an order of the Court.

**F.  Basis for Facts Contained in this Affidavit**

  10. Except where otherwise noted, the information set forth in this affidavit has been provided to me directly or indirectly by Special Agents of the DEA or other law enforcement officers.  Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed.  Such statements are among many statements made by others and are stated in substance,

---

[2] The absence of a law enforcement officer at the time of the actual search in the context of computer files located with an Internet Service Provider has been deemed constitutional.  United States v. Bach, 310 F.3d 1063 (8th Cir. 2002), *cert. denied* 123 S. Ct. 1873 (2003).

unless otherwise indicated. Similarly, information resulting from surveillance, except where indicated, does not set forth my personal observations but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance.

11. I have not set forth each and every fact learned during the course of this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the issuance of a search and seizure warrant based on the instant affidavit.

**G. Probable Cause**

12. Since 2005, federal law enforcement officers, as part of a multinational task force, began investigating a maritime drug trafficking organization responsible for smuggling large amounts of cocaine from South America to the United States and Europe and laundering narcotics-related proceeds via financial institutions in the United States. Jose Ricardo Camesella-Ferreira has been identified as a Spanish national who is responsible for the coordination of maritime shipments of cocaine from South America. Camesella-Ferreira is currently the subject of judicialized intercepts of wire communications being conducted by the Spanish National Police. Based on the intercepts conducted by the Spanish National Police, investigators have learned that Camessela-Ferreira is currently coordinating the transportation of three thousand kilograms of cocaine to be shipped from South America. The investigation has further identified that Camesella-Ferreira recently traveled to Venezuela to arrange the coordination of the maritime shipment of cocaine.

13. On October 8th Camesella-Ferreira traveled to Caracas, Venezuela with Rosangeles Isasis. Investigators have identified that Rosangeles Isasis is the subscriber of Venezuela-based

telephone number 584147815793. Investigators have identified that in July, 2005, Venezuela-based telephone number 584147815793 was in contact with telephones identified as being used by Camesella and furthermore with a satellite telephone identified onboard the vessel CERES II, which in July, 2005 was stopped by Spanish authorities off the coast of Liberia and was found to contain approximately 3.7 tons of cocaine.

14. On October 17, 2005 surveillance observed Camesella-Ferreira utilizing a public call center and internet café in Cumana, Venezuela. During the surveillance in the internet café investigators identified that Camesella- Ferreira utilized e-mail accounts **jcamesella@hotmail.com** and **richardchesman@hotmail.com** .

15. On November 5, 2005 a call was intercepted by the Spanish National Police in which Camesella-Ferreira spoke to Rosangeles Isasis. During that conversation Camesella-Ferreira told Isasis that he (Camesella-Ferreira) had just spoken to the "friends" and that they "the friends" are going to leave for the "finca" (ranch). Investigators believe that in the above referenced conversation Camesella-Ferriera advised Isasis that maritime narcotics trafficking subordinates of Camesella-Ferreira were in route to a separate maritime vessel, known to Camesella-Ferriera and Isasis, that was to supply three thousand kilograms of cocaine to the Camesella-Ferriera drug trafficking group.

16. On November 6, 2005 an incoming call was intercepted by the Spanish National Police in which "Julian" called Camesella-Ferriera. During that conversation Julian asked Camesella-Ferreira "how it was going at the "finca" (at the maritime vessel). Camesella advised that it was going well but that Camesella needed the "address of the finca" (the geographical

coordinates of the vessel).  The conversants further discussed that the "address of the finca" would be sent via e-mail to Camesella-Ferreira and that Camesella-Ferriera wanted them (geographical coordinates) so that they could be passed to a "boat captain".  Investigators believe that during this call Camesella-Ferreira was coordinating the receipt of a set of geographical coordinates of the maritime source of supply vessel that was to rendezvous with, and provide a quantity of cocaine to, subordinates of Camesella-Ferreira in a maritme transfer.  Investigators further believe that Camesella-Ferriera would utilize **jcamesella@hotmail.com** and/or **richardchesman@hotmail.com** in the furtherance of the narcotics trafficking venture.

     17.  On November 8, 2005 an administrative subpoena was caused to be served on Hotmail Inc. requesting information pertaining to **jcamesella@hotmail.com** and **richardchesman@hotmail.com**.  Hotmail Inc. records identify that **jcamesella@hotmail.com** is subscribed to in the name of Jose Ricardo Camesella and was registered on October 11, 2005 in Colombia.  Hotmail records further identify that **richardchesman@hotmail.com** was also registered in Colombia on October 11, 2005, that **richardchesman@hotmail.com** was registered approximately two minutes after **jcamesella@hotmail.com** , and that **richardchesman@hotmail.come** was registered from the same IP (Internet Protocol) address as **jcamesella@hotmail.com**.  The "richardchesman" account is subscribed to Chesman Bayona in Colombia.

     18.  On November 8, 2005 your affiant issued a preservation letter to Hotmail, requesting that they preserve the stored e-mail communications of **jcamesella@hotmail.com** and **richardchesman@hotmail.com** .    Log-on records provided by Hotmail for the period of

October 11th to November 8th show that **jacamesella@hotmail.com** had 11 log-ons and that **richardchesman@hotmail.com** had 8 log-ons. These records also show that the 2 accounts were logged in from the same addresses and at similar times. For example, on November 8, 2005, **jcamesella@hotmail.com** showed a log-on at 1:53 p.m., **richardchesman@hotmail.com** showed a log-on at 1:54 p.m. Both accounts showed log-ons from the same IP address.

19. On November 14, 2005 judicial intercepts of wire communications being conducted by the Spanish National Police identified that the maritime vessel which Camesella-Ferriera had coordinated to meet with the source of supply vessel was not going to arrive at the coordinate destination in time.

## H. Conclusion

20. Based upon the information above, I have probable cause to believe that on the computer systems owned, maintained, and/or operated by Hotmail, headquartered at 1065 LaAvenida, Building #4, Mountain View, California 94043, there exists evidence of offenses against the United States, namely violations of Title 21, United States Code, Sections 952, 959, 963, and Title 46 United States Code Appendix, Section 1903, as more fully set forth above, will be found at the location to be searched. By this affidavit and application, I request that the Court issue a search warrant directed to Hotmail allowing agents to seize the e-mail and other information stored on the Hotmail servers for the computer accounts and files specified in Attachment A. The warrant will be faxed to Hotmail personnel who will be directed to produce those accounts and files.

## I. Request for Sealing

21. Since this investigation is continuing, disclosure of the search warrant, this affidavit, and/or this application and the attachments thereto will jeopardize the progress of the investigation. Accordingly, I request that the Court issue an order that the search warrant, this affidavit in support of application for search warrant, the application for search warrant, and all attachments thereto be filed under seal until further order of this Court. In addition, because notification of the existence of this order will seriously jeopardize an investigation, I request that the Court issue an order pursuant to 18 U.S.C. Section 2705(b) ordering Hotmail not to notify any person of the existence of the application, affidavit, search warrant and attachment, until directed to do so by the Court.

_____
Stephen F. Fraga
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this _____ day of November, 2005.

_____
Honorable
District Court Magistrate Judge